UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL MARTINO, et al.,  :  No. 1:12-cv-00562
      Plaintiffs,  :
      v.  :  **OPINION AND ORDER**
WIRE TO WIRE, INC., et al.,  :
      Defendants.  :

This matter is before the Court[1] on the following two motions. We consider below Defendant TriVersity Construction Company, LLC's Amended Motion to Dismiss Plaintiffs' Third Amended Complaint or, in the alternative, Abate Plaintiffs' Claim (doc. 51) and the Motion to Dismiss or Abate Claims against Chapel Electric Co., LLC (doc. 50), as well as Plaintiffs' memorandum in response to both (doc. 57) and Defendants' respective replies (docs. 62, 61).

**I. Background**

This cause of action was commenced in August 2012 (doc. 1). A first (doc. 10), then a second (doc. 19), amended complaint followed. In all, seven claims have been brought by Plaintiffs Michael Martino, Brian Yelton and Russell Schroer, in various groupings, against Defendants Wire to Wire, Inc., their

---

[1] This matter was transferred to this Court's docket from the docket of the Honorable Susan J. Dlott on August 20, 2014 (doc. 65).

1

employer, and Todd Philpott and Martin Crabill, both owners—and the purported alter egos—of Wire to Wire.[2] There are allegations of: unpaid and underpaid overtime compensation under the Federal Labor Standards Act ("FLSA") and a retaliation charge related thereto (first and seventh claims); a failure to comply with the record-production requirements of Article II, Section 34a of the Ohio Constitution and Ohio Rev. Code § 4111.08 (second claim); a failure to pay wages in a timely manner as required under Ohio Rev. Code § 4113.15(A) (sixth claim); and a failure to pay Kentucky's prevailing wage on two different projects (third and fourth claims). Pertinent to the instant motions is the fifth claim, which was refined in the Third Amended Complaint that added TriVersity Construction and Chapel Electric as named Defendants (see doc. 39). To appreciate its substance, however, a slight digression is necessary.

In April and May 2013, suggestions of voluntary (Chapter 7) bankruptcy by Defendants Philpott and Crabill were filed (docs. 33 and 27, respectively). In this same time-band, Plaintiffs filed a suggestion of bankruptcy advising the Court that Defendant Wire to Wire had been subjected to an involuntary Chapter 7 bankruptcy petition (see doc. 30). Chief Judge Susan

---

[2] Two other Defendants, Volpenhein Brothers Electric, Inc. and Morel Construction Co., were named in the Second Amended Complaint (doc. 19), but both were quickly dismissed with prejudice (see docs. 25, 29).

2

J. Dlott, to whom this cause of action was then assigned, administratively terminated it from her docket on May 3, 2013, granting the parties leave to reinstate when (and, presumably, if) appropriate (see doc. 33).  Plaintiffs then filed a "Complaint Asserting Nondischargeability of Certain Debts under 11 U.S.C. §§ 523(a)(2), (4) and (6)" against Defendant Philpott in the United States Bankruptcy Court for the Southern District of Ohio.  See In re Philpott, Chapter 7 Case No. 1:13-bk-12066 (Bankr. S.D. Ohio 2013) (doc. 22).  In it, they allege, inter alia, that Defendants Wire to Wire and Philpott submitted to "upper tier contractors" certified payroll reports and notarized conditional lien releases stating that Plaintiffs had been paid full prevailing and proper overtime wages.  Martino, et al. v. Philpott, Adversary Proceeding Case No. 1:13-ap-01084 (Bankr. S.D. Ohio 2013) (doc. 1 ¶¶ 15, 19).  In actuality, though, Plaintiffs were paid wages less than the amount Defendants certified (id. (doc. 1 ¶¶ 20, 27)).  Plaintiffs maintain that Defendants received from these upstream contractors "reimbursement" amounts that exceeded the wages paid to them, with Defendant Philpott pocketing the difference.  This use "for his own purposes" amounts to defalcation and embezzlement in their view, and Plaintiffs urge that his debt to them for the wages they contend they are owed should not be discharged.  Id. (doc. 1 ¶¶ 24, 28-34).

3

Plaintiffs amended their dischargeability complaint to add TriVersity Construction and Chapel Electric as defendants on a breach of contract theory. Id. (doc. 12 ¶¶ 76-83). They then filed motions to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1), urging that Plaintiffs' purported claims against them were not sufficiently related to Defendant Philpott's Chapter 7 proceeding. Id. (docs. 22, 20). In response, Plaintiffs filed a motion for relief from the automatic stay to proceed against Defendant Philpott, along with TriVersity and Chapel, in this Court. In re Philpott, Chapter 7 Case No. 1:13-bk-12066 (Bankr. S.D. Ohio 2013) (doc. 27). That motion was denied on March 10, 2014:

> The motion to terminate or condition the automatic stay filed by Michael Martino, Brian Yelton, and Russell Schroer, former employees of Wire to Wire, Inc., is hereby **DENIED** as moot. The bankruptcy court will retain jurisdiction over the adversary complaint and enter a final order determining whether the debts underlying the FLSA and related state law claims asserted against the Debtor Todd Philpott, individually, are nondischargeable under § 523(a)(2), (4), and (6). <u>The automatic stay does not extend to the codefendants named in the parallel lawsuit initiated in district court</u> by Martino, Yelton, and Schroer. <u>The district court litigation against these particular codefendants can proceed</u> unaffected by the automatic stay which expired in the bankruptcy case.

Id. (doc. 42 at 6-7 (footnote omitted) (emphasis added)). The bankruptcy court thereafter dismissed TriVersity Construction and Chapel Electric from the adversary proceeding for lack of jurisdiction on March 24, 2014. See Martino, et al. v.

4

Philpott, et al., supra (doc. 33 at 2 ("Accordingly, the Motions are **GRANTED**. The Plaintiffs' actions against Tri[V]ersity and Chapel are **DISMISSED**. This action shall proceed on the Plaintiffs' dischargeability action, alone, against Mr. Philpott.")).

The day after the bankruptcy court denied their motion for relief from the automatic stay as it related to Defendant Philpott, Plaintiffs filed in this Court a motion for an order to lift the stay against Defendant Wire to Wire on the premise that it did not—indeed, as a corporate entity, could not—receive a Chapter 7 discharge (doc. 35). Judge Dlott granted that motion (doc. 36). With consent of counsel for Defendant Wire to Wire (see doc. 38), Plaintiffs filed their Third Amended Complaint on March 26, 2014, two days after TriVersity and Chapel were dismissed from the adversary proceeding in bankruptcy, adding them as named Defendants to the litigation pending in this Court (see doc. 39).

TriVersity Construction was the general contractor of the United Way Renovation Project, the subject of Plaintiffs' fifth claim for relief. TriVersity entered into a subcontract with Chapel Electric, which, in turn, entered into a subcontract with Wire to Wire. Plaintiffs' employer, therefore, became a "sub subcontractor" by virtue of these relationships. TriVersity and Chapel are the "upper tier contractors" to whom certified

5

payroll reports were submitted by Defendant Philpott, on behalf of Defendant Wire to Wire, for the purpose of securing lien releases. Plaintiffs sue for breach of contract under Ohio common law, claiming that they should have been paid the stipulated wage rate of $27.40 per hour for all work done by them on the project. Plaintiffs had no direct contractual relationship with TriVersity or Chapel, but maintain that they are the "third-party beneficiaries" of the wage provision contained within the agreements into which TriVersity and Chapel and, in turn, Chapel and Wire to Wire, entered. The total amount in controversy is $6,005.55 (doc. 39 ¶¶ 76, 80).[3]

## II. Discussion

Defendants TriVersity Construction and Chapel Electric urge that dismissal pursuant to Fed. R. Civ. P. 12(b)(1) is appropriate because this Court lacks subject-matter jurisdiction of the state common law breach of contract claim asserted against them. No federal question jurisdiction exists under 28 U.S.C. § 1331, as Plaintiffs concede that the Davis-Bacon Act is inapplicable (see doc. 57 at 9-10). Moreover, Plaintiffs do not allege diversity of citizenship of the parties or a sufficient

---

[3] Plaintiff Martino claims to be owed $1,776.00, an additional $7.40 per hour for the 240 hours he worked on the United Way project (doc. 39 ¶¶ 74-76). Plaintiff Yelton claims to be owed $4,229.55, an additional $9.40 per hour for 325 hours worked and $6.95 for 169 hours worked, all hours likewise with respect to said project (doc. 39 ¶¶ 77-80). These two amounts total $6,005.55.

6

amount in controversy to trigger jurisdiction under 28 U.S.C. § 1332. In the absence of original jurisdiction then, the only means by which this Court could consider the claim against TriVersity and Chapel would be through a discretionary exercise of supplemental jurisdiction, vis-à-vis the other six claims against Defendant Wire to Wire, under 28 U.S.C. § 1367.

Defendants also contend that dismissal is appropriate pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a viable claim. They argue first that a "sub subcontractor" is only an incidental beneficiary of the contractual terms between the general contractor and its subcontractor, and, therefore, has no right of action in the event of a breach. Hence, in the matter before us, if Wire to Wire lacks standing to sue TriVersity or Chapel, then clearly Plaintiffs, as Wire to Wire's employees, do as well. See The Kuempel Co. v. Dayton Malleable, Inc., No. 76AP-893, 1977 WL 200214 (Ohio App. 10th Dist. June 14, 1977). Second, Defendants TriVersity and Chapel maintain that specific language within the agreement they executed in connection with the project, specifically Section 1.3, precludes any finding in Plaintiffs' favor (see doc. 51, Exh. A).

In response, Plaintiffs argue that they are the intended third-party beneficiaries of the contractually stipulated wage provisions, not simply "incidental" ones, and thus have standing to sue under Ohio law as interpreted by the Sixth Circuit. See

7

Norfolk & Western Co. v. United States, 641 F.2d 1201 (6th Cir. 1980). Moreover, they contend that documents other than the agreement between TriVersity Construction and Chapel Electric, ones not currently before the Court, are pertinent and require study before any determination on the merits is made.

On the issue of whether this matter ought to be held in abeyance, Defendants assert that resolution of the fraud claim against Debtor Philpott must occur before Plaintiffs can develop their putative third-party beneficiary theory in this forum. We agree. Ostensibly a complement of threshold findings of fact and conclusions of law will attend the ruling by the bankruptcy judge presiding over the pending adversary proceeding. This Court anticipates findings as to the wage rate promised to Plaintiffs by their employer for hours worked on the United Way Renovation Project; the wage rate, if any, to which Plaintiffs were otherwise entitled; the total amount of hours Plaintiffs actually worked; and whether the payroll reports submitted by Defendant Philpott to Chapel Electric—and, ultimately TriVersity Construction—were indeed false. We similarly expect conclusions as to whether Defendant Philpott committed fraud and, if so, whether Plaintiffs are entitled to recover the difference between the wages they actually received and the wages he claimed to have paid them. A finding of fraud renders any related debt nondischargeable, and would enable Plaintiffs to

8

seek full recovery from Defendant Philpott in the first instance. Should the bankruptcy court find to the contrary, Plaintiffs can then return to this Court, at which time we expect that Defendants TriVersity and Chapel will renew their Rule 12 motions to dismiss.

Plaintiffs' contention that abatement is not indicated because their employer, Wire to Wire, remains a defendant in this action is unavailing. Wire to Wire has not answered or otherwise responded to the Third Amended Complaint (filed on March 26, 2014) that added TriVersity and Chapel as named Defendants. Plaintiffs are obviously aware of this circumstance inasmuch as they applied to the Clerk for an Entry of Default against Wire to Wire on June 11, 2014 (see doc. 55).[4] Furthermore, in seeking consent under Fed. R. Civ. P. 15(a) to file that pleading, Plaintiffs were expressly advised by counsel for Wire to Wire that he was preparing a motion to withdraw (see doc. 38, Exh. 1). In support of that motion, filed just two days later, Defendant Philpott declared under penalty of perjury that, "Wire to Wire has ceased all business operations, and to my knowledge has no assets to protect. . . . The corporation has no intention of renewing operations, and has no means with which to pay for legal expenses or any legal judgment[]" (doc. 42,

---

[4] This application remains pending.

9

Exh. 1).[5] As aptly noted by Defendant Chapel Electric, "[c]learly, Wire to Wire will not be addressing the merits of Plaintiffs' factual claims in this forum, and Plaintiffs know this better than anyone[]" (see doc. 61 at 3). Moreover, as Plaintiffs consistently have maintained, "Defendant Philpott was, at all times relevant, an alter ego of Employer. Philpott had, at all times relevant, complete control over Employer along with [Defendant] Crabill, <u>and Employer has no separate mind, will or existence of its own</u>[]" (doc. 39 ¶ 14 & <u>Martino, et al. v. Philpott</u>, supra (doc. 1 ¶ 9) (emphasis added)). Without a doubt, the adversary proceeding against Defendant Philpott should run its course in the bankruptcy court before TriVersity and Chapel are called to defend the derivative breach of contract claim Plaintiffs seek to litigate here. The delay attendant to abatement will be both purposeful and practical, conserving judicial resources with little, if any, prejudice to Plaintiffs.

**III. Conclusion**

The motions to dismiss or, in the alternative, abate filed by Defendants TriVersity Construction Company, LLC and Chapel Electric Co., LLC (docs. 51 and 50, respectively) are **GRANTED IN PART AND DENIED IN PART**. The motions to dismiss Plaintiffs'

---

[5] Chief Judge Dlott granted Attorney Stephen E. Imm's motion to withdraw on April 4, 2014 (doc. 43).

10

state common law claim for breach of contract are **DENIED WITHOUT PREJUCICE**. The alternative motions to hold said claim in abeyance are **GRANTED**. Plaintiffs are **ORDERED** to file with the Clerk of this Court a brief report describing the status of the proceedings in Martino, et al. v. Philpott, Adversary Proceeding Case No. 1:13-ap-01084 (Bankr. S. D. Ohio 2013) **no later than December 8, 2014, and every ninety (90) days thereafter.**[6] Finally, the preliminary pretrial conference set for Tuesday, September 9, 2014 at 11:00 a.m. is **VACATED**.

    SO ORDERED.

Dated: September 8, 2014    s/S. Arthur Spiegel_____
                                          S. Arthur Spiegel
                                          United States Senior District Judge

---

[6] This Court is aware of the case management deadlines currently in place in the bankruptcy court, namely that discovery is to be completed by October 31, 2014 and motions for summary judgment are to be filed by January 5, 2015, with a two-day trial set for April 14, 2015. Martino, et al. v. Philpott, Adversary Proceeding Case No. 1:13-ap-01084 (Bankr. S.D. Ohio 2013) (doc. 42).

11